Clarence A. **CAVINS** and Mary G. **Cavins, Plaintiffs,**

v.

**AETNA LIFE INSURANCE COMPANY, Defendant and Third-Party Plaintiff,**

v.

**ALLIS–CHALMERS CORPORATION, Third-Party Defendant.**

No. 83–C–2003.

United States District Court, E.D. Wisconsin.

May 28, 1985.

Marjan R. Kmiec, Milwaukee, Wis., for plaintiffs.

Robert C. Burrell, Milwaukee, Wis., for Aetna Life Ins. Co.

Randi C. Hammer, Chicago, Ill., for Allis-Chalmers Corp.

## MEMORANDUM AND ORDER

WARREN, District Judge.

Some six weeks ago, on April 16, 1985, the United States Supreme Court stated unequivocally that when the judicial resolution of a state law claim in a civil action is substantially dependent upon analysis of the terms of an agreement made between parties to a labor contract, such a claim must either be treated as a cause of action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), or dismissed as pre-empted by federal labor-

contract law. That significant ruling formed the cornerstone of the Court's decision in *Allis-Chalmers Corporation v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)—a decision that, in this Court's view, mandates an award of summary judgment in this action in favor of the non-plaintiff parties. In fact, the factual basis for the Supreme Court's decision in *Lueck* is so nearly identical to the circumstances upon which the present lawsuit is premised that Justice Blackmun's legal analysis of the pre-emptive effect of Section 301 might reasonably be adopted in its entirety as a basis upon which to dispose of the present action.

The petitioner-employer in *Allis-Chalmers Corporation v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), coincidentally the third-party defendant in this action, along with a labor union of which the respondent-employee was a member, were parties to collective bargaining agreement, incorporating by reference a group health and disability plan that made benefits available for nonoccupational illness and injury to all employees. That agreement also established a four-step grievance procedure, culminating in final and binding arbitration if the union chose to pursue an employee's contract grievance to that level.

In July of 1981, the respondent in *Lueck* suffered a nonoccupational back injury while carrying a pig to a friend's house for a pig roast. Thereafter, he notified the employer of his injury and filed a disability claim with the insurance company responsible for administering the group health and disability plan; again coincidentally, that insurer is the defendant and third-party plaintiff to the present lawsuit. Although the insurance company originally approved the employee's disability claim and made arrangements for his receipt of benefits, the petitioner-employer allegedly ordered the insurer to terminate his payments on several occasions; after each termination, the employee questioned the action or supplied additional information, and the benefits were restored.

Nonetheless, the respondent in *Lueck* believed that he was being harassed and, in January of 1982, sued both his employer and the disability plan insurer in Milwaukee County Circuit Court, alleging intentional, contemptuous, and repeated failures to make disability payments under the negotiated plan absent a reasonable basis for such withholdings and breach of the duty to act in good faith and deal fairly with an employee's disability claims. Significantly, the respondent-employee never pursued the grievance procedures established in the collective bargaining agreement prior to initiating his judicial cause of action.

The trial judge in *Lueck* granted motions for summary judgment in favor of the petitioner-employer and the insurer, finding that the respondent had stated a claim under Section 301 of the Labor Management Relations Act and, in the alternative, that if his claim were deemed to arise under state law rather than Section 301, it was pre-empted by federal labor-contract law. Although the Wisconsin Court of Appeals affirmed that ruling, the State Supreme Court reversed, holding that the employee's cause of action did not, in fact, arise under Section 301 but was, instead, a tort claim for bad faith. The Wisconsin high court distinguished the tort of bad faith from a bad-faith breach of contract claim, noting that although a breach of duty existed by virtue of the contractual relationship between the parties, that duty was independent of the contract itself.

The United States Supreme Court disagreed. In his opinion for a unanimous bench, Justice Blackmun observed that Congress had not stated explicitly whether and to what extent it intended to pre-empt state law by Section 301 of the Labor Management Relations Act, which provides, in pertinent part, as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....

29 U.S.C. § 185(a). At the same time, Justice Blackmun concluded that "[i]f the policies that animate Section 301 are to be given their proper range, ... the pre-emptive effect of Section 301 must extend beyond suits alleging contract violations." *Allis-Chalmers Corporation v. Lueck,* —— U.S. ——, ——, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). In this context, he specifically observed that the interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law likewise mandate that the meaning accorded contractual language be subject to uniform federal interpretation:

... Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by re-labeling their contract claims as claims for tortious breach of contract.

Were state law allowed to determine the meaning intended by the parties in adopting a particular contract phrase or term, all the evils [of disruption and uncertainty in the negotiation and administration of collective bargaining agreements] would recur. The parties would be uncertain as to what they were binding themselves to when they agreed to create a right to collect benefits under certain circumstances. As a result, it would be more difficult to reach agreement, and disputes as to the nature of the agreement would proliferate. Exclusion of such claims "from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law." *Smith v. Evening News Assn.,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962).

*Allis-Chalmers Corporation v. Lueck,* —— U.S. ——, ——, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985).

With respect to the Wisconsin Supreme Court's description of the employee's cause of action as a claim for the tort of bad faith, Justice Blackmun opined that fundamental questions of contract interpretation nonetheless underly any finding of tort liability; since, in his words, the federal legislature has "mandated that federal law govern the meaning given contract terms, ... [the life given by the state tort] to these terms in a different environment ... [necessitates pre-emption]." *Allis-Chalmers Corporation v. Lueck,* —— U.S. ——, ——, 105 S.Ct. 1904, 1914, 85 L.Ed.2d 206 (1985).

This result is further compelled, according to Justice Blackmun, by the interest in preserving the central role of arbitration in matters relating to industrial self-government, as follows:

... If respondent had brought a contract claim under § 301, he would have had to attempt to take the claim through the arbitration procedure established in the collective-bargaining agreement before bringing suit in court. Perhaps the most harmful aspect of the Wisconsin decision is that it would allow essentially the same suit to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement....

Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by a complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, *Republic Steel Corp. v. Maddox,*

379 U.S. 650, 653 [85 S.Ct. 614, 616, 13 L.Ed.2d 580] (1965), as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance. . . .

. . . Unless federal law governs . . . the meaning of the health and disability-benefit provisions of the labor agreement would be subject to varying interpretations, and the congressional goal of a unified federal body of labor-contract law would be subverted. The requirements of § 301 . . . can not vary with the name appended to a particular cause of action. . . .

[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see *Avco Corp. v. Aero Lodge 735*, 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968), or dismissed as pre-empted by federal labor-contract law. . . .

*Allis-Chalmers Corporation v. Lueck*, —— U.S. ——, —— – ——, 105 S.Ct. 1904, 1914–1916, 85 L.Ed.2d 206 (1985). In the end, the Court determined that the respondent's complaint should have been dismissed for his failure to make use of the grievance procedures prescribed by the collective bargaining agreement or dismissed as preempted under Section 301 of the Labor Management Relations Act.

As indicated above, the critical facts of the present case are so nearly identical to those presented in *Lueck* that the result announced in that appellate decision effectively dictates the proper resolution of the parties' instant claims. Here, as in *Lueck*, the plaintiff's [1] employer and the labor union of which he was a member are parties to a collective bargaining agreement that incorporates by reference a negotiated group health and disability plan funded by the third-party defendant and administered by the defendant and third-party plaintiff. Among other things, the plan provides both temporary and long term disability benefits for nonoccupational illnesses and injuries suffered by any represented employees and contains a grievance procedure for resolving contractual disputes, including those arising under the disability plan.

In January of 1981, the plaintiff was apparently involved in a non-work-related automobile accident in which he suffered back and knee injuries. Although he was initially awarded and received disability payments pursuant to the terms of the collective bargaining agreement, those temporary benefits were ultimately terminated on April 22, 1981. Shortly thereafter and despite his continuing claims to total disability, the plaintiff was discharged from employment, purportedly as a result of his failure to return from medical leave. That termination decision was eventually overturned by an arbitrator upon the plaintiff's grievance. Thereafter, the third-party defendant-employer provided him with weekly disability benefits retroactive to the date of their discontinuance in April of 1981. Long term disability payments for the six-month period from January through June of 1982 were ultimately provided as well.

Based on supplemental medical examinations, diagnoses, and reports, the employer eventually determined that the plaintiff was able to perform light duty work with certain restrictions and thus directed him to report for reemployment on January 3, 1983. The plaintiff did not return to work but instead voluntarily reentered the hospital, presumably for additional medical treatments. Following its receipt and review of yet another physician's statement of disability, the third-party defendant-employer determined that the plaintiff was, indeed, capable of returning to work with certain medical restrictions, ordered him to resume his employment in February of

---

**1.** Although both Clarence A. Cavins and his wife, Mary G. Cavins, initiated this action, the Court refers in today's order to only one plaintiff, solely in the interest of stylistic clarity. The principal cause of action advanced by plaintiff Mary G. Cavins is for loss of consortium; *see infra* at 313.

1983, and discontinued long term disability benefits as of March of 1983.

Although the plaintiff never returned to work, he was placed on capacity layoff shortly after termination of his benefit payments. In May of 1983, the plaintiff sought reconsideration of the decision terminating his long term disability benefits—a request again reviewed by the employer's medical personnel who, as before, determined that the plaintiff-employee was not disabled. There is apparently no dispute that the plaintiff never initiated grievance proceedings under the terms of the collective bargaining agreement as a means of protesting the termination of his long term benefits payments; instead, in December of 1983, he initiated the present federal action.

By his complaint, the plaintiff sets forth the factual basis for his cause of action and charges that the defendant-insurer improperly investigated and processed his claims for disability benefits. He further alleges that the insurance company intentionally terminated his disability payments under the collectively-bargained benefit plan, as a result of which he incurred certain debts, economic losses, psychological harm, and emotional distress. In this context, the complaint asserts five purely state law claims—namely, breach of contract, intentional and tortious refusal to pay benefits due and owing, intentional infliction of emotional distress, conspiracy to injure reputation and employment, and loss of consortium. By his ad damnum clause, the plaintiff seeks contract, compensatory, and punitive damages, along with such other relief as the Court deems equitable.

In February of 1984, the defendant-insurer filed its answer and affirmative defenses to the plaintiff's complaint and joined the plaintiff's employer pursuant to a third-party complaint based, among other things, on the theories of indemnity and contribution. In its answer filed some two months later, the employer raised various defenses to the third-party complaint against it and the principal complaint filed by the plaintiff— notable among them, that the several causes of action advanced by the plaintiff are wholly pre-empted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

In the Court's view, the recent decision of the United States Supreme Court in *Allis-Chalmers Corporation v. Lueck*, —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), discussed *supra* at ——–——, mandates disposition of this action in favor of the defendant and third-party plaintiff and the third-party defendant. As demonstrated by the Court's descriptions of the principal cause of action in *Lueck* and the plaintiff's claims for relief in the present lawsuit, these cases are virtually indistinguishable both legally and factually. Among other matters, the Court is convinced that resolution of the present plaintiff's five state law claims is, in Justice Blackmun's words, "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corporation v. Lueck*, —— U.S. ——, ——, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Here, as in *Lueck*, the entire cause of action is properly dismissed for failure to make use of the established grievance procedures or as wholly pre-empted by Section 301 of the Labor Management Relations Act.

The defendant-insurer and the third-party defendant-employer's companion motions for summary judgment now before the Court are supported not only by arguments with respect to the pre-emptive effect of Section 301 but also by discussions of pre-emption under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; the nonarbitrary and noncapricious nature of the decision to terminate the plaintiff's long term disability benefits; the propriety of the investigation and processing of his benefits claims; the plaintiff's failure to exhaust available administrative and contract remedies; and his wholesale failure to state any claims upon which relief might be granted pursuant to the purely state causes of action articulated in his complaint. The Court has reviewed the movants' extensive briefs on

these issues along with the numerous, supporting exhibits, affidavits, and deposition transcripts. Although it is inclined to believe that any one of the several arguments advanced in support of summary judgment might properly form the basis for a favorable ruling today, the Court will grant the pending motions based solely on the unequivocal import of the United States Supreme Court's recent decision in *Allis-Chalmers Corporation v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

#### CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the motion of defendant Aetna Life Insurance Company for summary judgment as to the entire cause of action against it, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

The Court further GRANTS the motion of third-party defendant Allis-Chalmers Corporation for summary judgment as to the entire cause of action against it, likewise pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.