Elizabeth BALE and Jennifer Fife, Plaintiffs-Appellants,

v.

GENERAL TELEPHONE COMPANY OF CALIFORNIA, and Does 1–50, Defendants-Appellees.

No. 85–5734.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1985.

Decided July 25, 1986.

---

David Llewellyn, Jr., Santa Ana, Cal., for plaintiffs-appellants.

Mark Sullivan, Santa Monica, Cal., for defendants-appellees.

Before WALLACE, ANDERSON, and NORRIS, Circuit Judges.

WALLACE, Circuit Judge:

Bale and Fife seek damages from their former employer, General Telephone Company of California (General Telephone), for

allegedly tortious conduct arising from General Telephone's representations at the time of hiring. The district court, exercising removal jurisdiction, dismissed their state tort claims as preempted by federal labor law. Bale and Fife appeal the denial of their motions to amend the judgment and to remand their state claims to state court. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Bale and Fife were hired by General Telephone on May 17 and June 3, 1982, respectively. Each alleges that at the time of hiring she was told that she would serve as a "temporary" employee for six months, and that at the end of six months her position would become "regular." Under the governing collective bargaining agreement, a "temporary employee"

> is a person who is employed for a continuous work period, not to exceed six months, when additional work of any nature requires a temporarily augmented force or where replacements are required for regular employees who are absent.

Agreement Art. VI § 14. "Regular" employees participate in benefit programs not open to temporary employees. Regular employees may be discharged only for cause and only pursuant to collective bargaining agreement procedures.

Bale and Fife allege that they were led to believe that the period of "temporary" employment was really a probationary period, at the end of which the rights and privileges of regular status would vest. Both Bale and Fife became members of Local 11510 of the Communications Workers of America, which represents General Telephone employees. Both worked for General Telephone for over six months. They say they believed that they had become regular employees on November 17 and December 3, 1982, respectively.

In November 1982, Local 11510 became aware that General Telephone had retained several temporary employees for over six months. On November 17, Local 11510 filed a grievance, complaining that General Telephone had violated the collective bargaining agreement by doing so. On November 29, Local 11510 filed another grievance on behalf of three regular employees who desired to return from a leave of absence. Local 11510 alleged that by retaining temporary employees General Telephone had violated collective bargaining agreement provisions giving a hiring preference to those on leaves of absence. This dispute was not finally settled until June 1983, when General Telephone and Local 11510 agreed that temporary employees at the facility where Bale and Fife worked should be discharged by August 1, 1983.

Meanwhile, Bale had become concerned that no official action had been taken to recognize that she had become a regular employee on November 17. In early December 1982, Bale asked Local 11510 to file a grievance on her behalf to gain recognition of her regular status. She was advised that the union would not represent temporary employees seeking regular status. In the spring of 1983, Fife contacted the local president and was told that General Telephone would discharge its temporary employees and replace them. The local president also told her that the union would not represent temporary employees who sought regular status. Local 11510 subsequently refunded to Bale and Fife the 60 percent of their union dues that had been retained by Local 11510 after their first six months of employment; the 40 percent that had been forwarded to the parent union was not refunded.

Bale and Fife were discharged on July 15, 1983. They filed suit in California state court against both General Telephone and Local 11510. Against General Telephone they alleged state law causes of action for breach of oral contract, fraud, and negligent misrepresentation. They also alleged a cause of action against General Telephone under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, for breach of a collective bargaining agreement. On the basis of this cause of action, General Telephone successfully re-

moved the action to the federal district court.

The district judge granted summary judgment for General Telephone and Local 11510. Bale and Fife moved to amend the judgment for General Telephone, see Fed. R.Civ.P. 59(e), asking the district court to hold that its state tort claims were not preempted by federal law and to remand these claims to state court. Bale and Fife appeal the district court's denial of this motion. They do not appeal the district court's entry of summary judgment on their section 301 and state contract claims.

## II

We address the district court's denial of Bale's and Fife's motion to remand their state claims to state court in two steps: (1) Were the state claims properly removed to federal court? (2) If so, once the district judge had dismissed the section 301 claim, should she have remanded the state claims?

### A.

■ The initial question on appeal is one of federal jurisdiction, which we review de novo. See Lumber Production Industrial Workers Local 1054 v. West Coast Industrial Relations Association, 775 F.2d 1042, 1045 (9th Cir.1985). Under 28 U.S.C. § 1441(a), a civil action brought in state court may be removed to a federal district court only if it could have been brought there originally. Bale's and Fife's own complaint, on its face, plainly stated a federal cause of action under section 301. Their state claims share with this federal claim "a common nucleus of operative fact," United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (Gibbs), since all the claims arise from alleged representations made at the time of hiring. The state claims therefore fall within the scope of pendent jurisdiction. Id. Since the action—both the section 301 claim and the pendent state claims—could have been brought originally in the district court, the

district court had jurisdiction on removal to address the pendent state claims.

Because the district court had pendent jurisdiction on removal over Bale's and Fife's state law claims, we need not now consider whether the district court could also exercise removal jurisdiction over these claims on the alternative ground that they could be recharacterized as federal section 301 claims. See Williams v. Caterpillar Tractor Co., 786 F.2d 928, 930–33, 935–37 & n. 6 (9th Cir.1986).

### B.

■ While the section 301 claim served as the basis for removal jurisdiction, the district court's subsequent dismissal of this claim did not deprive it of jurisdiction over the remaining pendent state claims. Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985) (Schultz); Anderson v. Allstate Insurance Co., 630 F.2d 677, 681 (9th Cir.1980) (Anderson). Our inquiry is limited to whether the district judge abused her discretion in not remanding the state claims to state court. Schultz, 759 F.2d at 718; Anderson, 630 F.2d at 681 n. 3.

■ We have no difficulty concluding that the district judge did not abuse her discretion in declining to remand the state claims. "[G]iven advantages of economy and convenience and no unfairness to litigants," a district court may freely address pendent state claims. Hagans v. Lavine, 415 U.S. 528, 546, 94 S.Ct. 1372, 1383, 39 L.Ed.2d 577 (1974). In light of the close relation between the federal and state claims, the district judge's decision to address the state claims was economical and convenient. In addition, we perceive no unfairness to the litigants. Furthermore, the fact that the state claims implicate the doctrine of federal preemption is a particularly strong factor in favor of the exercise of pendent jurisdiction. Id. 415 U.S. at 550, 94 S.Ct. at 1385; Gibbs, 383 U.S. at 727, 729, 86 S.Ct. at 1139, 1140.

## III

■ We now consider whether the district court correctly determined that Bale's

and Fife's state tort claims were preempted by federal labor law. We review this question of law de novo.

■ Bale and Fife were members of the bargaining unit covered by the collective agreement between General Telephone and Local 11510. The individual employment contracts entered into by Bale and Fife could therefore be effective only insofar as they were consistent with the collective agreement. *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1474 (9th Cir.1984) (*Olguin*). Any suit for breach of the individual employment contracts would therefore fall within the preemptive scope of section 301. *Id.* Bale and Fife now acknowledge that any state contract claims they would otherwise have are preempted by federal law. They contend, however, that they retain state tort claims for fraud and negligent misrepresentation.

The Supreme Court's opinion in *Allis-Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (*Allis-Chalmers*), informs our consideration of whether Bale's and Fife's state tort claims are preempted by section 301. In *Allis-Chalmers*, an employee was entitled to benefits for personal injury under an employer-funded insurance policy included in the collective agreement. The collective agreement further provided that disputes regarding insurance-related issues would be subject to a grievance procedure culminating in final and binding arbitration. The employee submitted his claims under the policy. While all the claims were eventually satisfied, the employee claimed that harassing conduct by his employer hindered his receipt of benefits. Without invoking the grievance procedure, the employee brought a state tort claim against his employer for bad-faith handling of his insurance claims. *Id.* 105 S.Ct. at 1907–08.

The Supreme Court held that the state tort claim was preempted by section 301. The Court expressly rejected the notion that section 301 preempted only contract claims:

If the policies that animate § 301 are to be given their proper range, ... the pre-emptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that "the relationships created by [a collective-bargaining] agreement" be defined by application of "an evolving federal common law grounded in national labor policy."

*Id.* 105 S.Ct. at 1911, *quoting Bowen v. United States Postal Service*, 459 U.S. 212, 224–25, 103 S.Ct. 588, 595–96, 74 L.Ed.2d 402 (1983) (bracketed material in *Allis-Chalmers*). Section 301 therefore also preempts tort claims which, "as applied, would frustrate the federal labor-contract scheme established in § 301." *Allis-Chalmers*, 105 S.Ct. at 1910. The Court declined to delineate the precise contours of section 301 preemption, as it observed that the "full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." *Id.* at 1916. At the same time, it did hold that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Id.* (citation omitted).

In *Allis-Chalmers*, the alleged state-law tort arose from the terms of the collective bargaining agreement, and its adjudication would have required reference to the provisions of that agreement. Bale and Fife urge that their state tort claims do not arise from interpretation of the collective bargaining agreement, but rather from representations outside of and unrelated to that relationship.

■ We cannot agree that Bale's and Fife's claims are sufficiently removed from the collective bargaining agreement to fall outside the preemptive ambit of section 301. We have never hesitated to find preemption of ostensible "tort" claims where those claims appeared to restate what in essence amounted to a contract claim. *See, e.g., Olguin*, 740 F.2d at 1474–76; *Magnuson v. Burlington Northern, Inc.*, 576

**780**

F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). *Allis-Chalmers* makes clear that "the pre-emptive effect of § 301 must extend beyond suits alleging contract violations," 105 S.Ct. at 1911, to encompass suits under state tort law that "would frustrate the federal labor-contract scheme established in § 301." *Id.* at 1910.

Bale's and Fife's state tort claims are preempted by section 301 since they "arose out of the same acts and conduct which formed the basis of" their section 301 claim. *Carter v. Smith Food King,* 765 F.2d 916, 921 (9th Cir.1985). Here, as in *Allis-Chalmers,* adjudication of their state tort claims would require reference to, and interpretation of, the terms of the collective bargaining agreement. In order to prove their fraud and negligent misrepresentation claims, Bale and Fife would be required to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made. Resolution of their state tort claims is therefore "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers,* 105 S.Ct. at 1916; *see Evangelista v. Inlandboatmen's Union,* 777 F.2d 1390, 1400–01 (9th Cir.1985); *Olguin,* 740 F.2d at 1474.

Because we have determined that section 301 preempts Bale's and Fife's state tort claims, we need not consider whether the claims would also be preempted by the primary jurisdiction of the National Labor Relations Board under the doctrine established in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *See Allis-Chalmers,* 105 S.Ct. at 1912 n. 9 (distinguishing *Garmon* preemption from section 301 preemption).

AFFIRMED.