Louise **NEWBERRY,**
Plaintiff–Appellant,

v.

**PACIFIC RACING ASSOCIATION and Tanforan Racing Association; Peter W. Tunney, individually and as Vice President and General Manager, Defendants–Appellees.**

No. 87–2350.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 15, 1988.

Decided Aug. 10, 1988.

Gerard J. Hinckley and Sylvia Courtney, San Francisco, Cal., for plaintiff-appellant.

Gary J. Okey, Cynthia L. Jackson, Michele Modena–Kurpinsky, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants-appellees.

Before ALDISERT,* CANBY and BEEZER, Circuit Judges.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by

ALDISERT, Circuit Judge:

The major question for decision in this appeal from the district court's grant of summary judgment for the defendants is whether plaintiff's state law claims against her employer for breach of an implied covenant of good faith and fair dealing and intentional infliction of emotional distress are preempted under section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185. The district court granted summary judgment to the defendants on Louise Newberry's claims brought under California law, ruling that section 301 preempted them. The court also held that Newberry failed to proffer sufficient evidence creating a genuine issue of material fact on her state law claims of libel and blacklisting. We will affirm the district court's judgment in all respects.

Louise Newberry brought this action in state court against defendants Pacific Racing Association, Tanforan Racing Association, and Peter Tunney. She alleged that the defendants were liable in damages for breach of an implied covenant of good faith and fair dealing, intentional infliction of emotional distress, libel, and blacklisting. The defendants removed the action to federal district court on the basis of federal question jurisdiction. The court subsequently granted defendants' motion for summary judgment on all of plaintiff's claims. On appeal, Newberry argues that the district court erred in granting defendants' motion for summary judgment on her state law claims. She also argues that the district court should have abstained from deciding the case.

For the reasons discussed below, the district court had jurisdiction in this state action, properly removed under 28 U.S.C. § 1441(a), based on 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. Appellant timely filed her notice of appeal under Rule 4, Fed.R.App.P.

I.

Newberry was employed for 37 years at Golden Gate Fields Race Course in Alame-

designation.

da County, California. Pacific and Tanforan each conduct racing at Golden Gate during certain times of the year. The Golden Gate complex has multiple levels of seating including, from lowest to highest, the grandstand, the grand mezzanine, the clubhouse, and the turf club. Customers gaining admission to the track through the lower levels are required to pay a fee if they desire to move to a higher level of the facility. Newberry was one of two persons operating "exchange booths" on the grandstand mezzanine level of the race track. From this booth, plaintiff sold "crossover" passes to customers who wanted to move from the grandstand to the clubhouse. After receiving the proper fee, Newberry gave crossover patrons a handstamp from a machine designed to count the number of stamps given.

In March 1985, Peter Tunney, the general manager of Pacific and Tanforan, noticed that reported racing revenues were lower than would be expected from the daily attendance figures. He believed that this discrepancy might have been caused by employees misappropriating funds and therefore initiated an investigation. Tunney stated that during the course of his investigation, he discovered that Newberry had keys to her hand stamping machine, a violation of track policy. In addition, an operations officer at Golden Gate discovered that two screws were missing from Newberry's machine and that the counting rod had been disconnected. Analysis of Newberry's sales revealed that on eight of the 17 days preceding the institution of monitoring, there was a discrepancy between her reported and actual unsold reserved seat tickets. After monitoring began, Newberry's sales significantly increased.

As a result of the investigation, Tunney discharged Newberry on June 23, 1985. Pursuant to a grievance procedure under the collective bargaining agreement between Pacific, Tanforan, and Newberry's union, Newberry filed a grievance alleging that she had been terminated without just cause. The grievance proceeded to arbitration and in November 1985, an arbitrator determined that defendants did not have just cause to discharge Newberry and ordered her reinstatement. However, the arbitrator concluded that Newberry was not entitled to back pay, because her accounting procedures "justifiably raised a suspicion on the part of the Associations of misappropriation of funds." CR 37, Ex. 1, at 10.

Newberry did not seek judicial review of the arbitrator's decision, but subsequently filed the present action in state court. After defendants removed the action to federal district court, the court granted defendants' motion for summary judgment on all of plaintiff's claims. Newberry appeals from the court's grant of summary judgment.

## II.

Summary judgment may be granted only if no genuine issue of material fact exists. Rule 56(c), Fed.R.Civ.P. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. On review, this court applies the same test that the district court should have adopted. *Twentieth Century–Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1328 (9th Cir.1983).

## III.

We first must decide whether Newberry's state law claim for breach of an implied covenant of good faith and fair dealing is subsumed by section 301 of the LMRA, so that it is in substance a federal claim removable to federal district court. Newberry argues that the district court erred in holding that her cause of action is preempted by section 301. She says that her claim falls outside the scope of federal law because it does not require an analysis

of the terms of the collective bargaining agreement.

■■■ The presence or absence of federal question jurisdiction that will support removal is governed by the well-pleaded complaint rule, under which federal jurisdiction exists only when a federal question is presented on the face of a properly pleaded complaint. *Caterpillar Inc. v. Williams*, — U.S. —, —, 107 S.Ct. 2425, 2428, 96 L.Ed.2d 318 (1987). Ordinarily, a case may not be removed on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the complaint and both parties concede that it is the only question truly at issue. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983). However, under the complete preemption doctrine, which is an independent corollary to the well-pleaded complaint rule, once an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law and is removable. *Williams*, — U.S. at — – —, 107 S.Ct. at 2428–2430; *Franchise Tax Board*, 463 U.S. at 24, 103 S.Ct. at 2854.

Although this court at one time stated that a case could not be removed to federal court on complete preemption grounds unless the federal cause of action relied upon provided the plaintiff with a remedy, *see Williams v. Caterpillar Tractor Co.*, 786 F.2d 928, 932 (9th Cir.1986), *aff'd, Caterpillar Inc. v. Williams, supra,* this analysis has been squarely rejected by the Supreme Court. *Williams*, — U.S. at — n. 4, 107 S.Ct. at 2429 n. 4; *see Avco Corp. v. Machinists*, 390 U.S. 557, 561, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). Accordingly, we need only inquire whether Newberry's claim arose under section 301, thus permitting removal to federal court, although the plaintiff may have sought a remedy available only under state law. *See Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853.

A.

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). A suit for breach of a collective bargaining agreement is governed exclusively by federal law under section 301. *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853. The preemptive force of section 301 is so powerful that it displaces entirely any state cause of action for violation of a collective bargaining agreement, *id.,* and any state claim whose outcome depends on analysis of the terms of the agreement. *IBEW v. Hechler*, — U.S. —, —, 107 S.Ct. 2161, 2165, 95 L.Ed.2d 791 (1987); *Stallcop v. Kaiser Foundation Hosps.*, 820 F.2d 1044, 1048 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). When "[t]he heart of the [state law] complaint [is] a ... clause in the collective bargaining agreement," that complaint arises under federal law. *Avco Corp.*, 390 U.S. at 558, 88 S.Ct. at 1236.

■■■ The Supreme Court recently analyzed section 301 preemption in *Lingle v. Norge Division of Magic Chef, Inc.*, — U.S. —, —, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988): "[W]e hold that an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." Accordingly, the key to determining the scope of section 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement. We are not certain that *Lingle* has promoted a new test to resolve the tension between section 301 federal claims and state causes of action, because the teaching of *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985), appears to have sent the same message:

> We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a

labor contract, that claim must either be treated as a § 301 claim, see *Avco Corp. v. Aero Lodge 735*, 390 U.S. 557 [88 S.Ct. 1235, 20 L.Ed.2d 126] (1968), or dismissed as pre-empted by federal labor-contract law.

We recognize that section 301 does not preempt every employment dispute tangentially involving the labor agreement, *Lingle*, ⸺ U.S. at ⸺ ⸺, 108 S.Ct. at 1881–83, and will proceed to analyze the appellant's contentions under the Supreme Court's twin tests, without indicating or suggesting that the tests do in fact differ: Does the application of state law "require[ ] the interpretation of a collective-bargaining agreement," *Lingle*, ⸺ U.S. at ⸺, 108 S.Ct. at 1885, or "substantially depend[ ] upon analysis of the terms of an agreement made between the parties in a labor contract?" *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916.

### B.

Newberry alleges that her employer breached an implied covenant of good faith and fair dealing owed to her under common law. *See Cleary v. American Airlines, Inc.*, 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980). This tort is designed to protect the job security of employees who at common law could be fired at will. *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1373 n. 9, 1374, 1374–75 n. 11 (9th Cir. 1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). Generally, no comparable lack of job security exists for unionized employees protected by a collective bargaining agreement. *Id.* at 1374–75 n. 11. "Thus, section 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir.1987); *see Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir.1984).

■ We have decided that Newberry's implied covenant claim fails to survive section 301 preemption analysis. Her application for state relief "requires the interpretation of a collective-bargaining agreement," *Lingle*, ⸺ U.S. at ⸺, 108 S.Ct. at 1885, or "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," *Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916, and therefore is preempted under section 301. An examination of Newberry's complaint demonstrates how firmly her claim is structured upon an interpretation and analysis of the collective bargaining agreement. In her complaint, Newberry makes several references to the labor contract that governed "the conditions of her employment." CR 1, at 4. "Pursuant to said employment agreement, Defendants promised that plaintiff's employment would continue indefinitely, that Defendants ... would not act arbitrarily in dealing with Plaintiff, and that Plaintiff's employment would not be terminated except for good, just and legitimate cause or reason." *Id.* Moreover, after track officials terminated Newberry, she relied on the labor agreement for redress. She brought a grievance under the contract and an arbitrator subsequently ordered the employer to reinstate her. Newberry's right to reinstatement, therefore, was directly based on the provisions of the labor agreement.

Newberry's state law argument can be distilled into three propositions: Under state law, an employment contract contains an implied covenant in favor of the employee requiring the employer to practice good faith and fair dealing, and violation of this covenant subjects the employer to liability. Newberry then points out that she was employed pursuant to an employment contract. Therefore, she concludes that her employer is subject to an implied covenant of good faith and fair dealing, and is liable for any breach thereof.

But a countervailing argument is at work here. The Supreme Court has held that when an asserted state claim "requires the interpretation of a collective-bargaining agreement," *Lingle*, ⸺ U.S. at ⸺, 108 S.Ct. at 1885, it is preempted under section 301. *Id.; see Allis–Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916. In the present case, Newberry's employment contract was the

collective bargaining agreement, and her cause of action, alleging that her employer did not practice good faith or fair dealing, requires us to interpret the specific language of the agreement's terms. Therefore, her claim is preempted under section 301. Although Newberry's argument is formally valid under principles of logic, it cannot avail her here because of a critical fact: the nature of her employment contract with the racing associations.

We conclude, therefore, that section 301 preempts Newberry's cause of action for breach of an implied covenant of good faith and fair dealing. The district court did not err in granting summary judgment to the defendants on her claim.

### IV.

█ Newberry next contends that the district court erred in granting defendants summary judgment on her claim for intentional infliction of emotional distress. In granting defendants' motion, the court ruled that Newberry's claim for the employer's conduct up to the time of her discharge was preempted under section 301. On appeal, she argues that section 301 does not preempt her claim because the contentions do not require an interpretation of the labor agreement, nor are they substantially dependent upon an analysis of the agreement's terms. She also contends that the defendants' conduct was so outrageous as to qualify for an exception to labor law preemption under *Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). We will first treat the period prior to, and including, her employment termination.

### A.

In *Farmer*, a union member brought a claim for intentional infliction of emotional distress against his union and its officials, alleging that he was a victim of a studied campaign of personal abuse and harassment that included frequent public ridicule, incessant verbal abuse, and discrimination in hiring referrals. Creating an exception to federal preemption, the Court held that this particular emotional distress claim was

not preempted under *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The Court reasoned that no provision of the National Labor Relations Act protected against the conduct complained of by the employee, which was so outrageous that "no reasonable man in a civilized society should be expected to endure it." 430 U.S. at 302, 97 S.Ct. at 1064. The Court established a two-prong standard for permitting concurrent jurisdiction over a tort action. "Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." *Id.* at 305, 97 S.Ct. at 1066.

The *Farmer* exception to preemption has been the subject of much discussion in this court. Although *Farmer* concerned an exception to the rules of preemption stated in *Garmon*, our earlier cases assumed that *Farmer* was relevant to section 301 preemption issues involving state-law emotional distress contentions. We generally held that the *Farmer* exception, if relevant at all, had to be strictly and narrowly construed.

In *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir.) (preemption under Railway Labor Act), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), this court recognized that *Farmer* created but a "narrow exception to federal preemption." Distinguishing *Farmer*, we decided that federal law preempted an employee's emotional distress action against his employer, because the state claim allegedly arose out of the employee's discharge or the defendants' conduct in the investigatory proceedings leading up to the discharge. All of these acts, we noted, had a substantial relationship to the labor contract and were covered by its grievance provisions. *Id.* at 1369–70.

Because we have repeatedly followed *Magnuson* in limiting the *Farmer* exception, a review of our subsequent decisions is necessary to understand the case law

development in this court. In *Beers v. Southern Pacific Transp. Co.*, 703 F.2d 425, 429 (9th Cir.1983), we held that an emotional distress claim arising out of an alleged wrongful discharge was preempted under federal law because the claim was "a minor dispute within the exclusive province of the grievance mechanisms of the Railway Labor Act." In *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1476 (9th Cir.1984), we said that the plaintiff "has not shown that any of the acts alleged in his emotional distress complaint were not disputes concerning employment or work conditions." Concluding that the *Farmer* exception did not apply, we held that the complaint could only be viable as a section 301 suit or one under a federal statute. *Id.; see also Scott v. Machinists Automotive Trades Dist. Lodge*, 827 F.2d 589, 594 (9th Cir.1987) (per curiam) (emotional distress claim preempted under section 301 when arising out of employee's discharge or conduct of employer in investigatory proceedings preceding discharge); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1002 (9th Cir.1987) (emotional distress claim due to discharge "inextricably intertwined with interpretation of CBA" and is preempted under section 301).

In *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350–51 (9th Cir.1985), the court stated that plaintiff's emotional distress claim, which was based on allegations of employer warning letters, reassignment of work duties, use of abusive language, and excessive surveillance, was inextricably intertwined with the labor agreement and did not rise to the level of outrageous conduct required to avoid preemption under *Farmer*.

We have now decided that the Supreme Court decision in *Allis–Chalmers v. Lueck* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), raises the very serious question of whether the *Farmer* exception is even relevant to section 301 preemption issues involving state-law emotional distress contentions. Thus, in *Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir.1988) we declared:

> Hyles claims that under the test set forth in *Farmer v. United Bd. of Carpenters & Joiners*, 430 U.S. 290 [97 S.Ct. 1056, 51 L.Ed.2d 338] (1977), the tort of intentional infliction of emotional distress escapes preemption. In *Farmer* the Supreme Court considered preemption of state tort claims under the National Labor Relations Act (NLRA). We have applied the *Farmer* test to section 301 cases. *See, e.g., Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984) *cert. denied*, 471 U.S. 1099 [105 S.Ct. 2319, 85 L.Ed.2d 839] (1985) and *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir.1984). But we decided those cases before the Supreme Court decided *Allis–Chalmers*. In *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563 (9th Cir.1987), decided after *Allis–Chalmers*, we limited *Farmer* to cases under the NLRA. *Allis–Chalmers*, not *Farmer*, controls preemption by section 301. *Vincent*, 828 F.2d at 565. Because the *Allis–Chalmers* test governs section 301 preemption, we reject Hyles' claim that *Farmer* exempts his claim from preemption.

### B.

We now apply the teaching of *Hyles* to the case before us. Newberry's complaint states that "[a]s a result of a cursory investigation into various racetrack operations including those within Plaintiff's position, Defendant TUNNEY decided, with no direct evidence and without just cause to accuse Plaintiff of theft and gross dereliction of duty, and discharged her from employment." CR 1, at 6, ¶ 18. As a proximate result of defendant's actions, Newberry contended that she "suffered humiliation, mental anguish, and emotional distress." *Id.* at 7, ¶ 20.

From these allegations, it is clear that Newberry's emotional distress claim arises out of her discharge and the defendants' conduct in the investigation leading up to it. A determination of the validity of her emotional distress claim will require us to decide whether her discharge was justified under the terms of the collective bargaining agreement. Her claim therefore cannot be decided without interpreting or ana-

lyzing the terms of the agreement. It is therefore preempted under the tests of *Lingle* and *Allis–Chalmers*. *Hyles*, at 1216 (emotional distress claim requires interpretation of bargaining agreement and is therefore preempted under section 301); *Miller v. AT & T Network Sys.*, 850 F.2d 543 (9th Cir.1988) (same).

Newberry's reliance on *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1369 n. 4 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), and *Tellez v. Pacific Gas & Elec. Co.*, 817 F.2d 536, 539 (9th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 251, 98 L.Ed. 2d 209 (1987), is misplaced. In both *Garibaldi* and *Tellez*, the plaintiff's emotional distress claim arose from conduct not covered by the labor agreement. Such is not the case here.

### C.

The district court did not apply preemption principles to Newberry's emotional distress claim for her employer's conduct subsequent to her discharge. Instead, it ruled that to the extent Newberry's claim was based upon track officials' alleged false statements about the plaintiff made after her termination, she had failed to present evidence raising a triable issue of fact. CR 53, at 9.

Under California law, the elements of a prima facie case for the tort of intentional infliction of emotional distress are (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress, (2) the plaintiff's suffering severe or extreme emotional distress, and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975 (1979). Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.;* *Davidson v. City of Westminster*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982).

Newberry's emotional distress claim for conduct following her discharge is based on Tunney's statements to individuals outside the track's employ. Following her discharge, Tunney told Glenn Dickey, a reporter for a local newspaper, that some employees at the track had been transferred and that "sloppy bookkeeping" practices had been eliminated. ER 32, 33, Attachment B, at 139. Tunney also told Robert Gunderson, the manager of Bay Meadows Race Track, that plaintiff had problems handling money. ER Attachment L, at 12–13.

█ Insofar as Newberry's claim is based on Tunney acting with intentional or reckless disregard for the plaintiff's well-being, we conclude that, as a matter of law, the officer's conduct did not rise to the level of outrageous conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez*, 24 Cal.3d at 593, 156 Cal.Rptr. 198, 595 P.2d 975. In evaluating the plaintiff's claim, the district court noted that "undisputed facts demonstrate that [Tunney's statements to Gunderson] were true." CR 53, at 6. In addition, the arbitrator concluded that plaintiff's dereliction of duties "justifiably raised a suspicion on the part of the Associations of misappropriation of funds." CR 37, Ex. 1, at 10. Because Newberry failed to produce evidence raising a triable issue, the district court properly granted the defendants summary judgment on her emotional distress claim for conduct subsequent to her discharge.

### V.

Contrary to Newberry's assertions on appeal, the district court did not preempt her libel claim:

> Plaintiff's libel cause of action alleges that Tunney supplied all of the information which appeared in the Dickey [newspaper] column. *There is no evidence to support that claim.*

CR 53, at 6–7 (emphasis added).

Newberry's libel claim is based on Tunney's conversation with Glenn Dickey. Based on this discussion, Dickey wrote a newspaper column detailing alleged skim-

ming operations by employees at Golden Gate Fields. The article, however, did not mention Newberry's name or her position at the track. In an affidavit, Dickey stated that Tunney told him only that some employees at the track had been transferred, and that sloppy bookkeeping practices had been eliminated. ER 32, at 2. Tunney stated that at no time during his conversation with Dickey "did I mention plaintiff, her position, or her termination, nor did I tell Dickey about any skimming operations." ER 33, at 5.

Under California law, truth is a complete defense to libel. *Swaffield v. Universal Ecsco Corp.*, 271 Cal.App.2d 147, 76 Cal. Rptr. 680, 689 (1969). In the present case, the district court noted that "[t]he undisputed facts establish the truth of the substance of Tunney's statement to Dickey. Plaintiff's handling of money, if not dishonest, was at least sloppy." CR 53, at 7. Because Newberry offers no facts or evidence contradicting the statements of Tunney or Dickey, the district court did not err in granting summary judgment to defendants on her libel claim.

## VI.

■ Newberry next contends that the district court should have abstained from deciding this case "because there are a number of issues of significant state policy presented in the case that should be decided by the state courts of California." Br. for appellant at 23. In particular, Newberry points to her blacklisting and libel claims. This court applies an abuse of discretion standard in determining whether, within narrow limits prescribed by the abstention doctrine, the district court should have abstained from deciding a dispute. *C–Y Develop. Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983).

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The Supreme Court has repeatedly stated that federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, *id.*

at 817, 96 S.Ct. at 1246, except in those extraordinary and narrow circumstances " 'where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' " *Id.* at 813, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)); *see Deakins v. Monaghan,* — U.S. —, —, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988).

In *Colorado River*, the Court noted three categories where abstention is appropriate. Abstention is appropriate in cases presenting federal constitutional issues that might be mooted or presented in a different posture by a state court determination of pertinent state law. 424 U.S. at 814, 96 S.Ct. at 1244. This case presents no federal constitutional issue for decision. Abstention is also appropriate where federal jurisdiction is invoked for the purpose of restraining state criminal proceedings. *Id.*, at 816, 96 S.Ct. at 1245. This case does not fall within this category. Finally, abstention is appropriate when federal courts are presented with difficult questions of state law bearing on policy problems of substantial public import "whose importance transcends the result in the case then at bar." *Id.* at 814, 96 S.Ct. at 1244; *see, e.g., Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). This case clearly does not fall within this category.

Newberry's libel and blacklisting claims are brought under settled California law. No difficult questions bearing on state policy are presented for decision, nor will a decision on the state claims impair efforts to implement state policy. *Colorado River*, 424 U.S. at 815, 96 S.Ct. at 1245. Accordingly, the district court did not abuse its discretion in exercising its jurisdiction in the present case.

## VII.

■ Finally, Newberry alleges that the evidence in support of her claim for blacklisting under California law was sufficient to create a genuine issue of material fact. Section 1050 of the California labor Code provides that "[a]ny person ... who, after

having discharged an employee from the service of such person ... by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." Cal.Lab.Code § 1050. Section 1054 authorizes a civil action to recover for violations of section 1050. *Id.* § 1054.

 Newberry's section 1050 claim is based on Tunney's meeting with Gunderson, the manager of Bay Meadows Race Track. In his deposition, Gunderson testified that he met with Tunney at which time Newberry was discussed. Gunderson stated that Tunney "explained the incident, the problem they had at Golden Gate Fields." ER Attachment L, at 12. However, Gunderson stated that Tunney did not say that Newberry was discharged for theft and dereliction of duty, but only that she was suspended because "there was some question as to the handling of the money involved." *Id.* at 12–13. When asked whether Tunney had indicated that there was some impropriety in the way money was handled, Gunderson responded, "Yes. He said she had a problem with it." *Id.* at 13. The arbitrator summoned by Newberry in the grievance procedure agreed. He stated that Newberry's accounting procedures "justifiably raised a suspicion on the part of the Associations of misappropriation of funds." CR 37, Ex. 1 at 10.

Newberry has not offered evidence sufficient to allow a reasonable jury to conclude that Tunney made any misrepresentation to Gunderson, as required under the California Labor Code. Newberry merely has established that Tunney said that she had problems with the handling of the defendants' money, but the facts demonstrate that Tunney's statement was true. Therefore, the district court did not err in granting defendants summary judgment on the blacklisting claim.

## VIII.

For the reasons stated, we will affirm the district court's grant of summary judgment to the defendants. We will deny defendant-appellees' request for double costs and attorneys' fees.

AFFIRMED.