MILNE EMPLOYEES ASSOCIATION,
et al., Plaintiffs,

v.

SUN CARRIERS, INC., et al.
Defendants.

No. C–88–4028–CAL.

United States District Court,
N.D. California.

Jan. 31, 1989.

Ronald A. Clark, Sacramento, Cal., and Richard E. Schwartz, St. Louis, Mo., for plaintiffs.

Charles G. Bakaly, Jr., O'Melveny & Myers, Los Angeles, Cal., for defendants.

## OPINION AND ORDER

LEGGE, District Judge.

Plaintiff has moved to remand this case to state court pursuant to 28 U.S.C. § 1447. The question presented is whether plaintiff's state law claims arise under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), and are thus removable.

### I.

Plaintiff, Milne Employees Association ("MEA"), is a nonprofit mutual benefit corporation which was formed for the purpose of conducting litigation on behalf approximately 800 former employees of defendant Milne Truck Lines ("Milne").[1] The identities of the individual claimants are, for the most part, not disclosed in the pleadings. But it is apparent from the face of the complaint that the assignees to MEA include both union and non-union workers, who were employed by Milne as truck drivers, dock and terminal personnel, clerical and other office personnel, maintenance employees, mechanics, supervisors, sales and marketing personnel and managers, and other lower and mid-level managers. Some but not all of the members of MEA were unionized employees in a collective bargaining unit and covered by collective bargaining agreements ("CBA").[2]

Plaintiff brought this action in state court against defendants Milne, its former parent company, Sun Carriers, Inc., two other trucking companies that were owned by Sun Carriers, the former owners of Sun

---

1. The court's analysis proceeds upon the assumption, drawn from the pleadings, that the former employees have individually assigned or will assign their claims to MEA for purposes of this litigation.

2. Defendants assert that a "substantial majority" of the former employee claimants in this action were covered by the collective bargaining agree-

ments between Milne and the International Brotherhood of Teamsters, Chauffeurs and Warehousemen, the Western Conference of Teamsters, and the International Association of Machinists ("IAM"), and more than 80 percent of Milne's workforce of approximately 1,600 employees at the time its operations terminated were unionized employees.

Carriers, and several individuals who were directors or officers of Sun Carriers or Milne. The complaint alleges that on September 11, 1987, Milne was closed and its employees were terminated. All of plaintiff's claims appear to arise from and relate to the termination of Milne's trucking operations, resulting in the employees being laid off. Plaintiff avers that beginning in January 1987 and continuing until September 1987, when Milne announced that it was terminating operations, defendants intentionally and fraudulently misrepresented to Milne's employees that Milne would remain in operation and that the employees' jobs were secure. Plaintiff's complaint alleges various state law tort claims and specifically disavows any reliance on the collective bargaining agreements. MEA alleges that the defendants are liable in damages for fraud, misrepresentation, breach of the implied covenant of good faith and fair dealing, interference with both contractual relations and prospective economic advantage, intentional infliction of emotional distress, and loss of consortium claims. In addition, MEA seeks to impose a constructive trust on defendants.

Defendants removed the action to this court on the basis of federal question jurisdiction. Plaintiff now moves to remand.

## II.

MEA argues that because no federal question appears on the face of the complaint, removal was improper.

Title 28 U.S.C. § 1441 provides that a defendant may remove a civil action "brought in a State court of which the district courts of the United States have original jurisdiction." The Supreme Court, in *Caterpillar v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987), recently reiterated the jurisdictional framework governing removal of federal question cases from state to federal courts:

"Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."

*Id.* 107 S.Ct. at 2429 (citations and footnotes omitted) (cited in *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir.1988)).

■ Ordinarily, a case may not be removed on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *See Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847, 77 L.Ed.2d 420 (1983). However, under the complete preemption doctrine, once an area of state law has been completely preempted by federal law, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *Caterpillar*, 107 S.Ct. at 2428–2430; *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir.1988).

## III.

■ As a threshold matter, plaintiff asserts that defendants did not have standing to remove this case based on the complete preemption doctrine, because the defendants other than Milne are not signatories to the collective bargaining agreements.

In *Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Committee*, 707 F.2d 1067 (9th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1709, 80 L.Ed.2d 182 (1984), the Ninth Circuit addressed an analogous standing issue. In that case, the defendant argued that it was not a proper party to a § 301 claim because the defendant was not a party to the underlying collective bargaining agreement. In rejecting this argument, the court stated:

"The fact that the Joint Committee is not a party to the agreement is immateri-

al. Section 301(a) does not contain any requirement that the parties to an action brought thereunder must also be parties to the allegedly breached contract.... All that is required for jurisdiction to be proper under Section 301(a) is that the suit be based on alleged breach of contract between an employer and a labor organization and that resolution must be focused upon and governed by the terms of the contract."

*Id.* at 1070–71. *Accord: Brown v. Keystone Consolidated Industries, Inc.*, 680 F.Supp. 1212, 1220–22 (N.D.Ill.1988) (fact that plaintiffs cannot prevail on § 301 claim against a nonsignatory to a labor agreement for claims that are substantially dependent on the terms of the labor agreement does not empower the court to legislate an exception to its preemptive effect).

This court concludes that defendants had standing to remove plaintiff's complaint to federal court on the basis of the complete preemption doctrine. A contrary conclusion would permit plaintiffs to circumvent the preemptive effective of § 301 by simply naming individual directors or officers of the employer, rather than the employer itself, and would seriously undermine the Congressional intent behind § 301 that collective bargaining agreements be interpreted under a uniform body of federal labor law. *See Allis–Chalmers v. Lueck*, 471 U.S. 202, 209–12, 105 S.Ct. 1904, 1910–12, 85 L.Ed.2d 206 (1985); *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 104, 82 S.Ct. 571, 576, 577, 7 L.Ed.2d 593 (1962).

### IV.

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). A suit for breach of a collective bargaining agreement is governed exclusively by federal law under § 301. *Franchise Tax Board*, 463 U.S. at 23, 103 S.Ct. at 2853;

*Newberry*, 854 F.2d at 1146. The preemptive force of § 301 is so encompassing that it also displaces entirely any state cause of action whose outcome depends on analysis of the terms of the agreement. *IBEW v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 2165, 95 L.Ed.2d 791 (1987); *Stallcop v. Kaiser Foundation Hosps.*, 820 F.2d 1044, 1048 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). When "[t]he heart of the [state law] complaint [is] a ... clause in the collective bargaining agreement," that complaint arises under federal law. *Caterpillar*, 107 S.Ct. at 2430, *citing Avco Corp. v. Aero Lodge 735*, 390 U.S. 557, 558, 88 S.Ct. 1235, 1236, 20 L.Ed.2d 126 (1968).

Preemption of state law claims is not appropriate where state causes of action "confer[ ] nonnegotiable state-law rights on ... employees independent of any right established by contract."[3] *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912; *Utility Workers of America v. Southern Cal. Edison*, 852 F.2d 1083, 1085–86 (9th Cir.1988); *Hyles*, 849 F.2d at 1216. Section 301 does not preempt every employment dispute tangentially involving the labor agreement. *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911.

The most recent formulation of § 301 preemption test is set forth by the Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), where the Court held that "an application of state law is pre-empted by § 301 ... only if such application requires the interpretation of a collective bargaining agreement." *Id.* 108 S.Ct. at 1885.

■ It is unclear whether the *Lingle* decision defines a new test or merely amplifies the similar formulation set forth in *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Allis–Chalmers*, the Court held that "when resolution of a state-law claim is substantially

---

**3.** The Supreme Court recently stated, however, that "[i]t is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collec-

tive bargaining agreement." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1882 n. 7, 100 L.Ed.2d 410 (1988).

dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1916 (citations omitted) (emphasis added). In *Newberry,* the Ninth Circuit analyzed the appellant's contentions under both tests "without indicating or suggesting that the tests do in fact differ." 854 F.2d at 1147. A distinction between the two tests, if any, is not relevant to the disposition of this motion. Therefore, the scope of § 301 preemption depends not on how the complaint is framed, but on whether the claims stated in the complaint can be resolved only by referring to the terms of the collective bargaining agreement. *Newberry,* 854 F.2d at 1146; *see also Ackerman v. Western Electric Co., Inc.,* 860 F.2d 1514, 1517 (9th Cir.1988).

### A.

■ MEA alleges that defendants intentionally misrepresented certain facts to Milne's employees, and fraudulently and negligently suppressed other facts, concerning the financial stability and future of Milne. Plaintiff's claims of misrepresentation, however, are inextricably intertwined with, and require interpretation of, the collective bargaining agreements.

In *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993 (9th Cir.1987), the plaintiff argued that her state law tort claims for fraud and misrepresentation arose from oral representations made outside of, and independent of, the collective bargaining agreement. *Id.* at 1001. The Ninth Circuit, observing that any representations regarding the plaintiff's job security would, of necessity implicate the collective bargaining agreement, concluded that:

> "In order to show misrepresentation, Young would be required to show that the terms of the CBA differed significantly from the terms of the individual contract. As resolution of her misrepresentation claims would substantially depend on interpretation of the terms of the CBA, the claims are preempted."

*Id.; see also Bale v. General Telephone Co. of California,* 795 F.2d 775, 780 (9th Cir.1986).

Similarly, here, plaintiff's claims center on representations allegedly made by defendants regarding plaintiff's job security, which require interpretation of the collective bargaining agreements in several respects. As in *Young* and *Bale,* to analyze those claims, this court will need to look at provisions of the agreements (e.g. the seniority, job security, layoff, notice, and plant closing clauses in those agreements) to determine whether those provisions differed from or supplemented the rights claimed by MEA.

Moreover, resolution of these claims would also require the court to interpret provisions in the Master Agreement which state that "[t]he employer agrees not to enter into any agreement or contract with his employees, individually or collectively, which in any conflicts with the terms and provisions of this Agreement" and which further provide that "[a]ny such agreement shall be null and void." (National Master Freight Agreement, hereinafter "Master Agreement," p. 25, attached as Exhibit 2 to the removal petition). The collective bargaining agreements which governed employment at Milne expressly detailed the circumstances under which the employees could be laid off or discharged. (Master Agreement, pp. 39, 62; Western States Area Supplemental Agreements, hereinafter "Supplemental Agreement," Part II, p. 5, Part III, p. 6, Part IV, p. 3, Part V, p. 3, attached as Exhibit 3 to the removal petition; the International Association of Machinists Agreement, hereinafter "IAM Agreement," pp. 7–12, 24, attached as an exhibit to defendants' opposition to plaintiff's motion to remand). Those agreements also addressed the circumstances under which Milne could close all or part of its operations and the effect that such a total or partial closing would have on the rights of the bargaining unit employees. (Master Agreement, pp. 39–41).

Therefore, to prove the fraud and misrepresentation claims, MEA "would be required to show that the terms of the collec-

tive bargaining agreement differed significantly from the individual employment contracts they believed they had made." *Bale*, 795 F.2d at 780.

Contrary to plaintiff's contention, *Caterpillar v. Williams*, 107 S.Ct. 2425, does not require a different result. In *Caterpillar*, the former employee plaintiffs were promoted to managerial positions outside the coverage of the collective bargaining agreement. Plaintiffs alleged that during the course of their employment, as managerial or weekly salaried employees, Caterpillar made oral and written representations. *Id.* at 2427. Subsequently, Caterpillar downgraded these employees to positions covered by the collective bargaining agreement. The Supreme Court held that the employees' claims for breach of individual contracts while managerial employees did not require interpretation or application of the collective bargaining agreement, and thus did not arise under federal law and were not removable to federal court. 107 S.Ct. at 2428–29. The fact that the challenged representations were made to plaintiffs while they were non-union employees, who were not covered by any collective bargaining agreement, was central to the Supreme Court's determination that plaintiffs' claims were not dependent upon interpretation of the collective bargaining agreement. *Id.* 107 S.Ct. at 2431.

Accordingly, plaintiff's claims for fraud and misrepresentation in this case, at least with respect to the unionized employees, arise under § 301.

### B.

A plaintiff may not avoid the preemptive effect of § 301 by merely labelling the causes of action as such claims as breach of the implied covenant of good faith and fair dealing, interference with contractual relations or interference with prospective economic advantage. Such claims are still preempted if the underlying employment relationship is governed by a collective bargaining agreement. In *Allis–Chalmers*, the Supreme Court observed that "[s]ince nearly any alleged breach of contract can be restated as a tort claim for breach of a good-faith obligation under a contract, the arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims." 471 U.S. at 219, 105 S.Ct. at 1915. *See also Newberry*, 854 F.2d 1142 and *Scott v. Machinists Automotive Trade District Lodge 190*, 827 F.2d 589 (9th Cir.1987).

Further, under California law, the tort of breach of the implied covenant of good faith and fair dealing is necessarily based on the existence of an underlying contractual relationship, and the essence of the tort is that a party to a contract cannot do anything that would deprive the other side of its rights with regard to that underlying contract. *See Seaman's Direct Buying Service v. Standard Oil Co.*, 36 Cal.3d 752, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). This tort is designed to protect the job security of employees who at common law could be fired at will. *Newberry*, 854 F.2d at 1147; *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1373 n. 9, 1374–75 n. 11 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985). Generally, no comparable lack of job security exists for unionized employees protected by a collective bargaining agreement. *Newberry*, 854 F.2d at 1147; *Garibaldi*, 726 F.2d at 1374–75 n. 11.

Accordingly, the Ninth Circuit has consistently held that § 301 preempts the implied covenant when an employee has comparable job security under a collective bargaining agreement. *Newberry*, 854 F.2d at 1147; *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d at 999; *Scott v. Machinists Automotive Trades District Lodge 190*, 827 F.2d 589. In *Scott*, the court held that a unionized employee's claim for breach of the implied covenant clearly depends upon interpretation of the collective bargaining agreement. 827 F.2d at 591–92.

Here, these claims for breach of the alleged covenant made by the unionized members of MEA cannot, for purposes of federal jurisdiction, survive § 301 preemption. The state cause of action "requires the interpretation of a collective bargaining agreement." *Lingle*, 108 S.Ct. at 1885. Plaintiff concedes, as it must, that the un-

derlying contracts, with respect to the unionized employees, are the collective bargaining agreements. While plaintiff disavows any reliance on a collective bargaining agreement, it is clear that this claim will require the court to interpret certain provisions of the collective bargaining agreements.

### C.

◼ Similarly, federal courts have uniformly held that where the underlying contract is a collective bargaining agreement, claims for intentional interference with contractual relations and interference with prospective economic advantage must be recharacterized as claims arising under federal law. *See e.g. Scott*, 827 F.2d 589 (9th Cir.1987); *Evangelista v. Inlandboatmen's Union of the Pacific*, 777 F.2d 1390 (9th Cir.1985); *Brown v. Keystone Consolidated Industries, Inc.*, 680 F.Supp. 1212 (N.D. Ill.1988); *Seid v. Pacific Bell, Inc.*, 635 F.Supp. 906 (S.D.Cal.1985).

Plaintiff alleges that the defendants other than Milne induced and caused defendant Milne to sever the employment relationship with the employees, and that all defendants interfered with the prospective advantages of the employees enjoyed in continued employment.

As with plaintiff's claims for breach of the implied covenant, these contract-based claims plainly require interpretation of the collective bargaining agreements. In determining whether defendants interfered with an employee's rights and prospective advantage under an employment contract, the court must construe the terms of the underlying contract itself. Accordingly, plaintiff's claims for interference with contractual relations and interference with prospective advantage, at least with respect to the unionized employees, arise under § 301.

### D.

◼ MEA also alleges that the conduct of defendants constitutes infliction of emotional distress. However, the Ninth Circuit has repeatedly held that where, as here, state law tort claims for emotional distress are based upon the same conduct as fraud or contract-based claims, which are substantially dependent upon interpretation of a collective bargaining agreement, emotional distress claims must also be construed as arising under § 301. *See e.g. Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142; *Miller v. A T & T Network Sys.*, 850 F.2d 543 (9th Cir.1988); *Hyles v. Mensing*, 849 F.2d 1213 (9th Cir.1988); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993.

For example, in *Newberry*, the plaintiff was fired for alleged misappropriation of track funds, and she brought state law claims for breach of the implied covenant of good faith and fair dealing and for intentional infliction of emotional distress. *Newberry*, 854 F.2d at 1144–45. Initially, the court concluded that plaintiff's claims for breach of the implied covenant arose under § 301, and then it found that plaintiff's emotional distress claim likewise arose under § 301. *Id.* at 1149–50. The court reasoned that the emotional distress claim arose from the same allegedly unlawful conduct as the contract-based claim, and therefore, a determination of the validity of the claim also requires the court to decide whether her discharge was justified under the terms of the collective bargaining agreement. *Id.; Accord: Hyles v. Mensing*, 849 F.2d 1213 and *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993.

Plaintiff relies on *Tellez v. Pacific Gas & Electric Co.*, 817 F.2d 536 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987), and *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir. 1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985) in support of its argument that the claims for intentional infliction of emotional distress do not arise under § 301. Its reliance, however, is misplaced. In both *Tellez* and *Garibaldi*, the Ninth Circuit determined that the claims were not tied to other claims which arose under § 301, and that the emotional distress claims did not otherwise require resort to any collective bargaining agreement. *Tellez*, 817 F.2d at 539–40; *Garibaldi*, 726 F.2d at 1371–75. Conversely, in this case, plaintiff's emotional distress

claims are based on the same alleged conduct by defendants which forms the basis of their fraud and contract-based claims. (Complaint ¶¶ 61–66). Moreover, plaintiff's emotional distress claims cannot be resolved without resort to the collective bargaining agreements which covered Milne's unionized employees, because this claim addresses job security and layoff issues—issues that are addressed in those collective bargaining agreements. Accordingly, plaintiff's claims for emotional distress, at least with respect to the unionized employees, arise under § 301.

### E.

■ Finally, on behalf of the spouses of certain discharged employees, MEA asserts a claim for loss of consortium. Under California law, however, a claim for loss of consortium is a derivative claim which cannot stand alone. *See Brittell v. Young*, 90 Cal.App.3d 400, 407 n. 5, 153 Cal.Rptr. 387, 391, n. 5 (1979) (unless a valid underlying claim is stated, a plaintiff cannot state a cause of action for loss of consortium).

Plaintiff admits that the claims for loss of consortium derive from the same conduct which forms the basis of the unionized employees' purported state law claims. (Complaint ¶ 72). Because those latter claims are grounded on rights created by a collective bargaining agreement, or dependent upon interpretation of a collective bargaining agreement, the derivative loss of consortium claims are also substantially dependent upon interpretation of the collective bargaining agreements which covered Milne's employees. *See e.g. Ward v. Savannah Maritime Ass'n*, 1988 WL 149622 1988 U.S. Dist. LEXIS 5575 (S.D.Ga. May 23, 1988); *Cavins v. Aetna Life Insurance Co.*, 609 F.Supp. 309 (E.D.Wis.1985). Accordingly, these claims for loss of consortium also arise under federal law.

### V.

■ Finally, the question remains whether the claims of the non-union employees also arise under federal law. The question is complicated here by the fact that plaintiff is a corporation, acting as assignee of the claims of both union and non-union employees. In *Caterpillar v. Williams*, the Supreme Court held that individual employment contracts of employees not covered by a collective bargaining agreement do not require the interpretation or application of a collective bargaining agreement. 107 S.Ct. at 2431. The Supreme Court in *Lingle*, however, suggests that, under certain facts, the claims of non-union employees may require collective bargaining interpretation. 108 S.Ct. at 1882 n. 7. The Court states: "Petitioner points to the fact that the Illinois right to be free from retaliatory discharge is nonnegotiable and applies to unionized and nonunionized workers alike. While it may be true that most state laws that are not pre-empted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption.... [I]f a law applied to all state workers but required, at least in certain instances, collective-bargaining-agreement interpretation, the application of the law in those instances would be pre-empted." *Id.* This court cannot resolve the issue of jurisdiction over the non-union claims on the present record.

Options available to the court to resolve the issue include: (1) permitting plaintiff to sever off the claims of the non-union employees and remanding them to state court; (2) exercising pendent jurisdiction over the non-union claims; or (3) stay its decision on the non-union claims pending further development of a factual record.

The court concludes and orders that:

(1) The claims of the union employees are preempted, and therefore plaintiff's motion to remand is DENIED, without prejudice to renewing the motion as to the claims of the non-union employees;

(2) The parties may take discovery and file whatever motions or briefs they believe are appropriate on the issue of the claims of the non-union employees; and

(3) The parties shall attend a status conference on March 10, 1989 at 11:00 a.m.

IT IS SO ORDERED.