**Michael W. SEWELL and Jackie Sewell, Husband and Wife, Plaintiffs,**

v.

**GENSTAR GYPSUM PRODUCTS CO., A DIVISION OF DOMTAR GYPSUM, INC., a Delaware corporation d/b/a James Hardie Gypsum, Doe Corporations IV through VI; and Does I through III, inclusive, Defendants.**

**No. CV–S–88–268–PMP.**

United States District Court, D. Nevada.

Nov. 28, 1988.

Gerald I. Gillock, Barker, Gillock, Koning, Brown & Earley, P.C., Las Vegas, Nev., for plaintiffs.

Salvatore C. Gugino, McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks, Las Vegas, Nev., for defendants.

## ORDER DISMISSING ACTION

PRO, District Judge.

Michael W. Sewell ("Plaintiff") is a former employee of Genstar Gypsum Products Company ("Defendant"), and initially filed this action in state court on March 7, 1988, alleging wrongful termination, and intentional infliction of emotional distress.[1] Defendant removed this action on April 15, 1988, stating as grounds for removal that the Complaint charged a violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), thereby vesting this Court with original subject matter jurisdiction.

On June 8, 1988, Defendant filed a Motion to Dismiss (# 6), asserting that: (1) Plaintiff's Complaint is preempted by § 301

---

1. Plaintiff Michael Sewell is joined nominally in this action by his wife, Plaintiff Jackie Sewell. However, the arguments and facts pertinent to the issues raised in the motions before the Court relate to conduct by Plaintiff Michael Sewell and Defendant.

of the LMRA, (2) Plaintiff's Complaint fails to allege that he exhausted all grievance and arbitration procedures mandated by the collective bargaining agreement between Defendant's predecessor in interest and Teamsters, Chauffeurs, Warehouseman and Helpers Local Union No. 631 (the "Union"), and (3) Plaintiff's Complaint is barred by the six-month statute of limitations.

Plaintiff filed an Opposition to Motion to Dismiss and Motion to Remand (# 8) on June 30, 1988, asserting that Plaintiff's claims for relief can be resolved without interpreting the Collective Bargaining Agreement and is therefore not preempted by § 301. In addition, Plaintiff cites *Bryant v. Ford Motor Co.*, 832 F.2d 1080 (9th Cir.1987) as the basis for remand to state court.

Defendant filed a Reply (# 9) on July 22, 1988 in which it argues that both of Plaintiff's causes of action are inextricably intertwined with the terms and conditions of the Collective Bargaining Agreement, and therefore preempted by § 301. Moreover, Defendant asserts that despite Plaintiff's failure to name the Union as a defendant in the Complaint, this action is, in fact, a hybrid action against not only the named Defendant (Plaintiff's former employer), but also the Union, and is therefore not only preempted by federal labor law, but also barred by the applicable statute of limitations.

Concurrent with the Reply, Defendant filed an Opposition to Plaintiff's Motion to Remand (# 10), in which it asserts that since *Bryant* does not apply to federal question subject matter jurisdiction, and since Plaintiff's Complaint was not removed to this Court based upon diversity jurisdiction, Plaintiff's reliance on *Bryant* is inappropriate.

On August 23, 1988, Plaintiff filed a "Response to Reply to Opposition to Motion to Dismiss and Motion to Remand" (# 12), to which Defendant filed a Reply (# 14) on September 30, 1988.

For the reasons discussed below, Defendant's Motion to Dismiss (# 6) is granted.

## FACTUAL BACKGROUND

Plaintiff had been employed by Defendant or Defendant's predecessor in interest since 1980, as an inspector. On July 22, 1986, Plaintiff was terminated from employment because his absences from work exceeded the number of absences permitted pursuant to the Collective Bargaining Agreement. On February 2, 1987, Plaintiff was reinstated as a laborer. Plaintiff asserts that the terms of his reemployment were not subject to the Collective Bargaining Agreement, but rather, to an "independent implied individual employment contract."

On April 10, 1987, Plaintiff was terminated once again for "violation of [Defendant's] attendance policy and the conditions agreed upon during [Plaintiff's] reinstatement meeting...." (# 12, Exhibit "1", attached thereto) On the same day as his termination, April 10, 1987, Plaintiff filed a grievance with the Union, maintaining that his termination had been "unfair." (# 12, Exhibit "3" attached thereto)

The record provides no indication as to any Union action concerning Plaintiff's grievance. Plaintiff alleges that in September 1987, he examined his personnel file and discovered that it contained no copy of the grievance he filed on April 10, 1987. Accordingly, Plaintiff maintains that September 15, 1987 was the earliest date on which he could have discovered that his grievance had not been pursued by the Union.

Plaintiff filed his Complaint in state court on March 7, 1988, and Defendant removed to this Court on April 15, 1988. The Complaint alleges in part:

## VII

At all times material hereto, the [Collective Bargaining] "Agreement" between [the Union] and [Plaintiff's predecessor in interest], which was issued to all employees at the time of their employment, was in effect. Said [Collective Bargaining] "Agreement", which was merged into each employee's oral contract of employment provided for dismissal or termi-

nation of an employee *only upon a showing of "just cause"*.

## VIII

On or about April 10, 1987, Plaintiff was notified by letter from Defendant, that he was being terminated effective 4–10–87, because of an alleged violation of attendance policy and the conditions agreed upon during the reinstatement meeting....

## IX

The ... letter of termination dated April 10, 1987, violated the [Collective Bargaining] "Agreement"....

## X

... Article [XXI] of the [Collective Bargaining] "Agreement" explained the procedure to be utilized prior to terminating the employment contract of any employee, and provided the basis upon which said employees, including Plaintiff, could reasonably rely to ensure that the termination process would be fair to all parties concerned. Plaintiff did not receive the required warning notice at any time prior to his termination by Defendants.

## XII

The aforementioned consistent practices of the Defendant gave rise to an implied contract of job security for all employees, upon which implied contract said employees, including Plaintiff, could reasonably rely to ensure that each termination would be based upon "just cause."

## XIII

The [Collective Bargaining] "Agreement" formed a part of the Plaintiff's contract of employment, upon which assurances Plaintiff could reasonably rely to ensure that his job was secure, notwithstanding the aforementioned termination for "just cause" in [sic] July 22, 1986. (# 5, Complaint, attached thereto.)

## WRONGFUL DISCHARGE CAUSE OF ACTION IS PREEMPTED

■ Plaintiff belatedly acknowledges that his cause of action for unlawful termination is, indeed, "a § 301 claim under *Ghebreselassie v. Coleman Sec. Service,* 829 F.2d 892 (9th Cir.1987) ]." At the same time, however, Plaintiff argues that the facts alleged in his Complaint can also give rise to two pendent claims: (1) breach of implied individual employment contract, and (2) intentional infliction of emotional distress. Regardless of how Plaintiff classifies his claims, this action is entirely preempted by § 301.

■ Section 301 of the LMRA creates a federal cause of action for breach of collective bargaining agreements. Federal laws govern suits brought for breach of a collective bargaining agreement, even if brought in state court. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). The application of federal law ensures the uniform interpretation of labor contract terms. See *Local 174, Teamsters Union v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

■ In order to preserve this uniformity, even a suit sounding in tort, rather than on breach of a collective bargaining agreement, is governed by federal law if the action is "inextricably intertwined with consideration of the terms of [a] labor contract." *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). In addition, § 301 preempts all state law causes of action which require interpretation of a labor contract's terms. See, e.g., *Allis–Chalmers,* 471 U.S. at 214–20, 105 S.Ct. at 1912–15 (finding preempted a state tort based on the duty to act in good faith and deal fairly, because the meanings of "good faith" and "fair dealing" were derived from the particular labor agreement).

The recent Supreme Court decision in *Lingle v. Norge Division of Magic Chef, Inc.,* —— U.S. ——, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988), analyzed the scope of § 301 preemption: "[W]e hold that an application of state law is preempted by

§ 301 of the [LMRA] only if such application requires the interpretation of a collective bargaining agreement." In *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1146 (9th Cir.1988), the Ninth Circuit commented on *Lingle* as follows:

> We are not certain that *Lingle* has promoted a new test to resolve the tension between section 301 federal claims and state causes of action, because the teaching of *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916 [85 L.Ed.2d 206] (1985), appears to have sent the same message:
>
>> 'We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see *Avco Corp. v. Aero Lodge 735,* 390 U.S. 557, 88 S.Ct. 1235 [20 L.Ed.2d 126] (1968) or dismissed as pre-empted by federal labor-contract law.'
>
> We recognize that section 301 does not preempt every employment dispute tangentially involving the labor agreement, *Lingle,* — U.S. —, 108 S.Ct. at 1881–83, and will proceed to analyze the [claimant's] contentions under the Supreme Court's twin tests, without indicating or suggesting that the tests do in fact differ: Does the application of state law "require[ ] the interpretation of a collective bargaining agreement," *Lingle,* — U.S. —, 108 S.Ct. at 1885, or "substantially depend[ ] upon analysis of the terms of an agreement made between the parties in a labor contract?" *Allis–Chalmers,* 471 U.S. at 220, 105 S.Ct. at 1916.

■ In his Opposition to Motion to Dismiss (# 8), Plaintiff argues that under *Lingle,* his action does not require interpretation of the Collective Bargaining Agreement, inasmuch as his claim of breach of an implied contract of job security had an independent basis under state law. Section 301 does not, as a matter of law, preempt every suit concerning employment:

> A state law claim is independent for the purposes of Section 301 if "resolution of ... [it] does not require construing the collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.,* — U.S. —, 108 S.Ct. 1877, 1882, 100 L.Ed. 2d 410 (1988).
>
> *Hyles v. Mensing,* 849 F.2d 1213, 1216 (9th Cir.1988)

■ If a court can uphold state rights without interpreting the terms of a collective bargaining agreement, allowing suit based on the state rights does not undermine the purpose of § 301 preemption. The key to determining the scope of § 301 preemption is not, therefore, based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the collective bargaining agreement. *Newberry v. Pacific Racing Ass'n,* 854 F.2d 1142, 1146 (9th Cir.1988).

After reviewing the Complaint and subsequent pleadings, however, this Court concludes that Plaintiff's cause of action, whatever the label, is not based on non-negotiable state law rights and is, in fact, inextricably intertwined with consideration of the terms of the Collective Bargaining Agreement. Plaintiff points to no independent, non-negotiable state standard by which this Court can judge Defendant's conduct.[2] Because the Collective Bargaining Agreement, rather than a state law standard, defines Defendant's authority to discharge employees under the circumstances presented in this action, Plaintiff's rights are not independent of the Collective Bargaining Agreement. The Collective Bargaining Agreement establishes Plaintiff's right to file grievance complaints, and grants him the right to be terminated only for just cause.

Plaintiff's assertion that he may assert a cause of action for breach of the Collective Bargaining Agreement, admittedly preempted under § 301, as well as a cause of action for breach of an implied indepen-

---

**2.** If a state action "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract," the claim is not preempted. *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912.

**1448**

dent employment contract, under state law, is without merit. Plaintiff's Complaint reveals that the terms under which he was reinstated via an oral contract merged into the Collective Bargaining Agreement. (Complaint, ¶ VII) The allegations contained in his Complaint, therefore, contradict Plaintiff's subsequent assertion that his discharge was independent of "just cause" and "warning letter" requirements contained in the Collective Bargaining Agreement. Moreover, the April 10, 1987 discharge letter makes clear reference to the attendance policy contained in the Collective Bargaining Agreement. Hence, the oral agreement under which Plaintiff was reinstated incorporated the terms of the preexisting Collective Bargaining Agreement. It is therefore clear that the rights and obligations of the parties were at all relevant times a product of the Collective Bargaining Agreement. See *Paige v. Hen-*

ry J. Kaiser Co., 826 F.2d 857, 861 (9th Cir.1987).[3]

Following his reinstatement as a laborer, Plaintiff was still a member of the bargaining unit covered by the Collective Bargaining Agreement. (Coll.Barg.Agmt, Appendix "A" at 22)[4] The individual employment contract which reinstated him could therefore be effective only insofar as it was consistent with the terms of the Collective Bargaining Agreement. *Bale v. General Telephone Co. of California,* 795 F.2d 775, 779 (9th Cir.1986) Consequently, a cause of action for breach of the individual reinstatement contract would fall within the preemptive scope of § 301. *Id.*[5]

Plaintiff alleges in his Complaint that Defendant's discharge of Plaintiff breached an implied contract of job security owed to Plaintiff, and recognized by the Nevada Supreme Court.[6] (Complaint, ¶ XII; # 12 at 10–12) This ostensible state claim fails

3. Plaintiff's reliance on *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed. 2d 318 (1987) is inappropriate. In *Caterpillar,* the Supreme Court held that terminated employees' allegations that their former employer had breached individual employment contracts were not completely preempted by § 301, where the employees' complaint was *not* dependent upon interpretation of the collective bargaining agreement, *did not* rely upon the agreement indirectly, and did *not* address the relationship between the individual contracts and the collective agreement. 107 S.Ct. at 2431. The converse is the case in this action. The relationship between Plaintiff's individual reinstatement agreement and the Collective Bargaining Agreement under which he was still covered, is inescapable.

4. Plaintiff maintains that "[s]ince the collective bargaining agreement is totally silent as to the creation of individual terms and conditions of reemployment, the Plaintiff's terms of employment are not substantially dependent upon interpretation of the bargaining agreement, ..." (# 12 at 13) Plaintiff misses the point. The Collective Bargaining Agreement explicitly covers employee classifications contained in the Appendix thereto, which includes "laborers," and recognizes the Union as the sole bargaining representative of all employees, subject to certain exceptions not applicable to Plaintiff. (Coll.Barg.Agmt., Art. I, II)

5. *Bale v. General Telephone* cites the seminal decision of *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1474 (9th Cir.1984), which contains an analysis directly on point:

... any independent agreement of employment could be effective only as part of the collective bargaining agreement. That agreement explicitly provides for dismissal on just cause. Even if the "wrongful discharge" is based on state tort law, it is preempted. The agreement provides the same or greater protection of job security that state tort law seeks to provide for nonunionized employees; accordingly federal law preempts state law. *[Plaintiff's] alleged right not to be dismissed without just cause is essentially equivalent to a right created by the collective bargaining agreement. Is is apparent that the true nature of [Plaintiff's] wrongful discharge complaint concerns the terms and conditions of employment as they are set out in the collective bargaining agreement.* (Citations omitted) (Emphasis added).

6. Plaintiff attempts to articulate an independent state law-based cause of action for wrongful discharge by relying on *K Mart v. Ponsock,* 732 P.2d 1364 (Nev.1987). In the *K Mart* decision, however, the Nevada Supreme Court did not significantly expand the crack in the common law door tentatively opened in *Hanson v. Harrah's,* 100 Nev. 60, 675 P.2d 394 (1984), which recognized only a narrow exception to the common law doctrine of at-will employment. In *K Mart,* the Nevada Supreme Court reiterated that its decision was limited to a *"fact-specific* instance of discharge ... of an employee in *bad faith for the improper motive* of defeating *contractual retirement benefits."* (Emphasis added.)

to survive § 301 preemption analysis.[7] In light of the repeated references to the Collective Bargaining Agreement's "just cause" and "warning letter" requirements, however, this claim is structured upon an interpretation of the Collective Bargaining Agreement. Furthermore, Plaintiff relied upon the grievance procedure contained in the Collective Bargaining Agreement for post-discharge relief. Any right to reinstatement, therefore, would be directly based on the provisions of the Collective Bargaining Agreement.

Accordingly, Plaintiff's wrongful discharge claim, whether framed in terms of breach of Collective Bargaining Agreement, breach of individual employment contract, or breach of implied covenant of job security, is governed by the terms of the Collective Bargaining Agreement, and is therefore preempted by § 301 of the LMRA.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM PREEMPTED

■ Plaintiff's Complaint contains a second claim for relief which alleges that in the course of its discharge of Plaintiff, Defendant engaged in outrageous conduct and thereby caused Plaintiff to suffer emotional distress. Plaintiff has not, however, demonstrated that any of the acts alleged to have caused him to suffer emotional distress did not arise independent of employment conditions governed by the Collective Bargaining Agreement. As dis-

cussed above, the conduct of which Plaintiff complains is governed by the Collective Bargaining Agreement, and is therefore preempted by federal labor law, to the exclusion of state law.

Under the facts presented before this Court, it is clear that Defendant's conduct does not approach the level of outrageousness as to qualify for the exception to labor law preemption under *Farmer v. United Bhd. of Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977).[8] Furthermore, in a recent decision, the Ninth Circuit declared:

> In *Farmer* the Supreme Court considered preemption of state tort claims under the National Labor Relations Act (NLRA). We have applied the *Farmer* test to section 301 cases. But we decided those cases before the Supreme Court decided *Allis–Chalmers*. In *Vincent v. Trend Western Technical Corp.*, 828 F.2d 563 (9th Cir.1987), decided after *Allis–Chalmers*, we limited *Farmers* [*Farmer*] to cases under the NLRA. *Allis–Chalmers*, not *Farmer*, controls preemption by section 301. Because the *Allis–Chalmers* test governs section 301 preemption, we reject [Plaintiff's] claim that *Farmer* exempts his claim from preemption. *Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir.1988) (Citations omitted).

From the allegations contained in Plaintiff's Complaint and subsequent pleadings, it is clear that his emotional distress claim arises out of his discharge and Defendant's

---

**7.** In *Miller v. AT & T Network Systems*, 850 F.2d 543, 548 (9th Cir.1988), the Ninth Circuit panel amended its decision to note that it foreshadowed the Supreme Court's approach in *Lingle.* The *Miller* panel utilized the following preemption test:

> In deciding whether a state law is preempted under section 301, therefore, a court must consider: (1) whether the CBA (Collective Bargaining Agreement) contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state had articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to

the first question is "yes," and the answer to either the second of third is "no."

**8.** In *Farmer,* the Supreme Court held that federal labor law did not preempt employer which was so outrageous that "no reasonable man in a civilized society should be expected to endure it." 430 U.S. at 302, 97 S.Ct. at 1064. The Court established a two-prong standard: "Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself." *Id.,* at 305, 97 S.Ct. at 1066. It cannot be reasonably argued that Defendant's conduct in connection with Plaintiff's discharge approached this standard.

alleged breach of contract (whether the Collective Bargaining Agreement directly, or the alleged implied individual labor contract of reinstatement). Any determination of the validity of his claim will require an analysis of whether his discharge was justified under the terms of the Collective Bargaining Agreement. It is therefore preempted by § 301. *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1149 (9th Cir.1988); *Miller v. AT & T Network Sys.*, 850 F.2d 543 (9th Cir.1988); *Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir.1988).

Plaintiff's exclusive remedies are provided by the grievance and arbitration procedures contained in the Collective Bargaining Agreement. As will be discussed below, Plaintiff exhausted these remedies, but failed to pursue this action in a timely fashion.

### ACTION BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Defendant asserts that Plaintiff's action is barred by the six-month statute of limitation established in *DelCostello v. Interna-*

*tional Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The statute of limitations established by the Supreme Court in *DelCostello* applies to a "hybrid" action against an employer, pursuant to § 301, alleging breach of the collective bargaining agreement, and against a union alleging breach of the duty of fair representation. A hybrid § 301 fair representation claim is, in effect, a challenge to the private settlement of disputes agreed upon by the employer and the union, as reflected in the collective bargaining agreement.[9] The Supreme Court has made clear that an employee's choice of defendants does not affect the legal analysis in which the court must engage: "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello*, 462 U.S. at 166, 103 S.Ct. at 2291.[10]

█ The Court finds that this action is a hybrid § 301 fair representation claim, and the six-month statute of limitations under *DelCostello* is applicable. The Collective

---

**9.** In grievance procedures, an allocation of responsibility exists between the employer and the union. The grievance procedure contemplates that both employer and union will perform their respective obligations. See *Bowen v. U.S. Postal Services*, 459 U.S. 212, 227, 103 S.Ct. 588, 597, 74 L.Ed.2d 402 (1983). The union plays a pivotal role in this procedure since it has the responsibility of determining whether to press an employee's claims. The union may waive any challenge to the employee's discharge, and thereby accept it as a final resolution of the matter. *Bowen*, 459 U.S. at 226, 103 S.Ct. at 597.

**10.** An action by an employee against a union for breach of the duty of fair representation and an action against an employer under § 301 for breach of collective bargaining agreement are inextricably interdependent. "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello*, 462 U.S. at 166, 103 S.Ct. at 2291 (quoting *Hines v. Anchor Motor Freight*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976)). Because such cases are not expressly governed by any federal statute of limitations, prior to *DelCostello*, federal courts generally applied state statutes of limitations to these federal claims.

See *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 60, 101 S.Ct. 1559, 1562, 67 L.Ed.2d 732 (1981). In *DelCostello*, the plaintiff employee alleged that his dismissal was in violation of the collective bargaining agreement and that the union had not represented him fairly in the grievance procedure. With respect to the appropriate statute of limitations, the Supreme Court held:

In *United Parcel Service, Inc. v. Mitchell*, we held that a similar suit was governed by a state statute of limitations for vacation of an arbitration award, rather than by a state statute for an action on a contract. We left two points open, however. First, our holding was limited to the employee's claim against the employer; we did not address what state statute should govern the claim against the union. Second, we expressly limited our consideration to a choice between two *state* statutes of limitations; we did not address the contention that we should instead borrow a *federal* statute of limitations, namely, § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). These cases present these two issues. We conclude that § 10(b) should be the applicable statute of limitations governing the suit, both against the employer and against the union.

*DelCostello*, 462 U.S. at 155, 103 S.Ct. at 2285 (emphasis original) (footnotes omitted).

Bargaining Agreement provides grievance and arbitration procedures for Plaintiff to contest his discharge.[11] By filing a "grievance form" with the Union on the day of his discharge (# 8, Exhibit "3" attached thereto), Plaintiff activated the grievance procedure as set forth in the Collective Bargaining Agreement. By so doing, Plaintiff involved the Union in the dispute over Defendant's discharge of Plaintiff.

While Plaintiff has not named the Union as a defendant, the gravamen of Plaintiff's action is that Defendant breached the Collective Bargaining Agreement, and that the Union breached its duty of fair representation following Plaintiff's discharge. Indeed, Plaintiff's response to Defendant's argument that this action is barred by the statute of limitations is that Plaintiff reasonably relied on the Union to pursue the discharge through the grievance and arbitration procedure established by the Collective Bargaining Agreement.

Having found that the *DelCostello* six-month statute of limitations is applicable, this Court must determine when Plaintiff's cause of action accrued and on that basis, compute the allowable time frame for bringing this action. In *DelCostello*, the Supreme Court did not directly address when a § 301 hybrid cause of action accrues. It has since been established, however, that the six-month period begins to run when an employee knows or should know of the alleged breach of duty of fair representation by the union. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

Plaintiff argues that the statute of limitations did not begin to run until September 15, 1987 when, Plaintiff alleges he first discovered that the Union had undertaken no action regarding his grievance. In other words, Plaintiff maintains that his cause of action cannot begin to accrue because neither Defendant nor the Union informed him about the outcome of his grievance regarding his discharge.

 In this action, Plaintiff's claim against Defendant for wrongful termination, and the implicit claim against the Union for breach of duty of fair representation, accrued when Plaintiff knew or should have known that the Union was not going to pursue Plaintiff's grievance on his behalf. *Lacina v. G–K Trucking*, 802 F.2d 1190, 1192 (9th Cir.1986), citing *Galindo*, *supra*. This Court must agree with Defendant that, as a matter of law, Plaintiff should have known that the Union would not pursue a grievance regarding Plaintiff's discharge prior to September 15, 1987.

This Court is aware that the record does not indicate that any final determination has been made of Plaintiff's grievance. Instead, the record indicates that the Union merely took no action whatsoever following Plaintiff's filing of his grievance on April 10, 1987. Nevertheless, the terms of the Collective Bargaining Agreement indicate that the Union's inaction regarding Plaintiff's grievance amounts to a decision not to pursue the grievance. Such a disinclination to pursue a grievance all the way to arbitration is no less final than an arbitration award.

Article XXI of the Collective Bargaining Agreement provides an employee the option to contest the propriety of his discharge through the grievance and arbitration procedure provided therein. It is undisputed that Plaintiff elected to avail him-

---

**11.** Article XXI of the Collective Bargaining Agreement provides that, "[t]he Company shall not discharge or suspend any employee covered by this Agreement without just cause; ..." as well as "[a]n employee decision to contest the propriety of his discharge may do so through the grievance and arbitration procedure herein provided." (# 6, Exhibit A, at 19, attached thereto) Plaintiff emphasizes the discretion accorded to a discharged employee insofar as whether or not to contest his discharge. Instead of permitting the discharged employee to circumvent the grievance and arbitration procedure so explicitly provided for in the Collective Bargaining Agreement, however, Article XXI merely affords the obvious: A discharged employee cannot be *required* to contest his discharge. Rather, the employee may elect to accept the company's decision, and seek employment elsewhere.

In the event an employee elects to contest his discharge, Article XV of the Collective Bargaining Agreement contains the procedure for settling grievances, and Article XVI provides for the convening of an arbitration committee.

self of the opportunity to pursue the grievance procedure when he filed the "Grievance Form" on the date of his discharge. Article XV of the Collective Bargaining Agreement provides that a written grievance shall be submitted to the union steward within five working days from the date of the initial meeting with the responsible supervisor concerning the incident which gave rise to the grievance—in this action, Plaintiff's discharge. Plaintiff submitted a written grievance on the same day as his discharge.

The grievance procedure provides, however, that upon receipt of the written grievance, if a meeting is needed to settle the grievance, one shall be scheduled within five working days. If no settlement is reached, a meeting is to be scheduled within ten working days following the initial meeting. If no settlement is reached through the second meeting, the grievance "may" be referred to the arbitration committee within 30 days following the second meeting. Finally, the Collective Bargaining Agreement explicitly provides that "[a]ny grievance not presented within the time limits as noted [herein], the grievance will be waived for all purposes." [12]

This Court has noted that the limitations period begins to run when Plaintiff knew or should have known that the Union was not going to pursue his discharge. Under the circumstances of this action, this Court finds that at some point prior to six months preceding the time this action was brought, Plaintiff, in the exercise of reasonable diligence, should have discovered that the Union would not pursue his discharge.

Plaintiff was discharged on April 10, 1987, and on that very day, he notified the Union of his desire to contest his discharge through the grievance procedure. The Union failed to schedule a meeting within five working days of Plaintiff's filing of his grievance form, as required by the Collective Bargaining Agreement. As noted above, once an employee elects to contest

his discharge, and files a written grievance, the Collective Bargaining Agreement requires the Union to process the grievance through two steps, and if no settlement is reached, to arbitration, until a final decision is reached, which would bind the employee.

According to the steps set forth in Article XV of the Collective Bargaining Agreement, the grievance procedure is exhausted in 45 days (not including the time consumed by the two authorized meetings). At the end of the 45-day period, the Union would have the option to take the unresolved grievance to the arbitration committee. Consequently, Plaintiff knew, or should have known, that under the provisions of the Collective Bargaining Agreement, once he elected to contest his discharge via the grievance procedure, the time to elect arbitration would have arrived approximately 45 days following his discharge.

Hence, Plaintiff should have known no later than late May or early June, 1987, of the Union's failure, whether by neglect or intent, to pursue his grievance. This Court therefore concludes that the Plaintiff's hybrid action accrued no later than June, 1987. Consequently, under *DelCostello*, Plaintiff had the benefit of the six-month period between June and December, 1987 within which to file this action. This Court holds that at some point prior to December, 1987, a reasonably diligent claimant should have realized that the Union was taking no action on his behalf. Under the circumstances presented in this action, Plaintiff cannot be allowed to claim ignorance of the status of his own employment grievance.

Plaintiff further argues that the statute of limitations should be tolled due to the alleged "fraudulent concealment" on the part of the Union regarding the Union's failure to pursue Plaintiff's discharge. Plaintiff makes this argument, without offering *any* evidence beyond the allegation itself, and does so not in his Complaint, but rather, in the last pleading submitted.[13]

12. The clause also provides as follows: "The time limits may be extended or substitute persons participate by mutual agreement if such request is received within the same time limit." (# 6, Exhibit A, at 13)

13. Assuming, *arguendo*, that Plaintiff had alleged in his Complaint that the Union had fraudulently concealed its decision not to take action on Plaintiff's grievance, it is nevertheless well settled that fraud must be plead with speci-

This Court, therefore, need not consider tolling the six-month statute of limitations.

This result is consistent with the strong federal policy favoring the prompt resolution of labor disputes. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981). This Court is impressed with the sensitivity displayed by the Seventh Circuit panel in *Metz v. Tootsie Roll Industries, Inc., infra,* when presented with circumstances similar to this action:

> We recognize, of course, that the Union should be encouraged to promptly notify the employee of its decision to pursue, or not to pursue, his or her claim and that this prompt action will help preserve any legal remedies available to the employee. To say, however, that the running of the statute of limitations will be postponed indefinitely until actual notification is received from the Union or the employer, would be contrary to the policy of prompt resolution. Lack of notification would leave claims unresolved indefinitely and leave the procedure open to all of the vices which statutes of limitations were intended to eliminate. 715 F.2d 299, 304 (7th Cir.1983)

In conclusion, under *Galindo v. Stoody Co.* and *Lacina v. G–K Trucking, supra,* Plaintiff's hybrid cause of action accrued approximately nine months prior to the initial filing of this action in state court, and is, under *DelCostello,* time barred. See also discussion in *Metz v. Tootsie Roll Industries, Inc.,* 715 F.2d 299, 304 (7th Cir. 1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984), citing, *inter alia, Hungerford v. United States,* 307 F.2d 99, 102 (9th Cir.1962).

### *BRYANT V. FORD MOTOR COMPANY* IS INAPPLICABLE

Finally, Plaintiff's argument that this action should be remanded to state court in accordance with *Bryant v. Ford Motor Company, supra,* must be rejected. This action was removed on the basis of federal

ficity. Plaintiff's bald allegations in his final pleading, "Plaintiff's Response to Reply to Opposition to Motion to Dismiss and Motion to Re-

subject matter jurisdiction, and not on diversity. The presence of fictitious Doe Defendants is, therefore, irrelevant.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (# 6) is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff's Motion to Remand (# 8) is DENIED.

mand," (# 12, at 16) utterly fails to establish the requisite specificity for serious judicial consideration.